CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.

Proposed Counsel for Collavino Construction Company Limited

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| COLLAVINO CONSTRUCTION COMPANY LIMITED, | : Case No. 15- |
| | : |
| Debtor. | : |
| | : |

------------------------------------------------------------------x

**AFFIDAVIT OF RENZO COLLAVINO**
**PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

| | |
|---|---|
| COUNTY OF ESSEX | ) |
| | ) ss: |
| PROVINCE OF ONTARIO | ) |

**RENZO COLLAVINO,** being duly sworn, deposes and says:

1.    I have been actively involved with Collavino Construction Company Limited ("CCCL" or the "Debtor") from its inception and am familiar with the day-to-day operations and financial affairs of the Debtor.

2.    I submit this affidavit pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") in support of the Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on the date hereof (the "Petition Date"). Except as otherwise indicated, all facts set forth in this affidavit are based upon personal knowledge, my review of relevant documents, or my opinion based upon

1

experience, knowledge, and information concerning the Debtor's operations. If called upon to testify, I would testify competently to the facts set forth in this Affidavit. I am authorized to submit this Affidavit on behalf of the Debtor.

       3.    Local Rule 1007-2 requires certain information related to the Debtor, which is set forth below and in the schedules annexed hereto. Unless otherwise indicated, the financial information contained herein is unaudited.

       4.    <u>Local Rule 1007-2(a)(1)</u>: The nature of the Debtor's business and the circumstances leading to the Debtor's filing this Chapter 11 case are as follows:

The Debtor is a Canadian corporation formed in 2007 and is a member of the family-owned Collavino Group whose entities operate in various sectors of the construction industry in the New York-New Jersey metropolitan area, Canada, and the Detroit metropolitan area. The Debtor was formed as a single purpose entity in connection with its successful bid to perform concrete work for The Port Authority of New York and New Jersey (the "Port Authority") on the public construction project known as the Reconstruction of One World Trade Center – Freedom Tower (the "WTC Project").

Pursuant to World Trade Center Contract No. WTC-1001.04-1, dated as of February 8, 2007 (the "Contract"), the Debtor contracted with the Port Authority as the prime subcontractor for the 105-floor cast-in-place concrete superstructure. Initially, the Debtor was engaged to perform below grade concrete work for the WTC Project. Thereafter the Port Authority also engaged the Debtor to perform the above grade work for the superstructure at the WTC Project site. Following the award of the Contract to the Debtor, the Debtor and its wholly owned subsidiary Collavino Construction Company Inc. ("CCCI") entered into a subcontracting agreement whereby CCCI would provide all necessary materials, labor and equipment to the

Debtor in connection with the performance of work on the WTC Project. In turn, CCCI entered into contracts with approximately fifty (50) other trade vendors to supply materials and equipment and provide other construction services on the WTC Project.

During the performance of the Contract, the Debtor experienced significant delays due to reasons beyond its control. As a result, the Debtor incurred a damage claim in the approximate amount of not less than $87,312,257.13 against the Port Authority on the WTC Project (the "WTC Claim"). On January 18, 2013, after substantially all of the work under the WTC Contract was complete and the Debtor had completed the roof pour, which was the last major concrete pour on the WTC Project, the Port Authority terminated the WTC Contract for convenience. Upon its termination of the WTC Contract for convenience, the Debtor (and ultimately to CCCI and its trade vendors) became entitled to payment for the actual costs incurred on the WTC Project through and including January 18, 2013 plus a reasonable mark-up for profit and overhead which amounts are included in the WTC Claim.

On or around May 3, 2013, the documentation of the WTC Claim was submitted to the Port Authority in further support of prior submissions that had been made to the Port Authority. After its submission, the Port Authority repeatedly refused to make payment of any of the amounts due and owing to the Debtor, CCCI and CCCI's trade vendors that were set forth in the WTC Claim. Moreover, the Port Authority even refused to acknowledge that the dispute between the parties had reached an impasse and therefore refused to elevate the Debtor's submission to the Chief Engineer in accordance with the dispute resolution procedure in the Contract. Over the course of the next fourteen (14) months, the Debtor, through counsel, made repeated attempts to discuss the resolution of the WTC Claim with the Port Authority and

schedule a settlement meeting to close out the Contract, however the Port Authority repeatedly stonewalled the Debtor.

On October 17, 2014, CCCI filed a chapter 11 bankruptcy case in this Court. Seven days after CCCI's bankruptcy filing, the Port Authority finally elevated the WTC Claim to the Chief Engineer for resolution in accordance with the Contract.

CCCI was forced to file its bankruptcy case in order to obtain the protections of the automatic stay and prevent the continued prosecution of seven (7) lawsuits filed by various subcontractors and suppliers on the WTC Project asserting breach of contract claims for non-payment in the aggregate amount of approximately one million ($1,000,000) dollars. The defense of these vendor lawsuits was hampering CCCI's business operations – namely, the provision of labor to related entity Collavino Corp. CCCI is a viable company with approximately one hundred seventy five (175) employees. As a result of its exemplary safety record on the WTC Project, CCCI achieved favorable worker's compensation insurance rates which allow for Collavino Corp. to offer competitive pricing on the labor component of its bids for construction projects. Currently, CCCI is providing labor to Collavino Corp. in connection with three (3) open construction projects in the New York-New Jersey metropolitan area.

The Debtor has determined that the bankruptcy court is the best forum for the just and speedy resolution of the WTC Claim for the benefit of the Debtor's estate, CCCI's estate and its creditors. In the Debtor's view, prosecuting the WTC Claim under the jurisdiction of the bankruptcy court will maximize CCCI's ability to reorganize in a timely manner by facilitating the adjudication of the WTC Claim and preventing the Port Authority from continuing its unchecked delay tactics. The Debtor believes that this oversight will ultimately cause CCCI and

its trade creditors to receive a quicker and more meaningful return on their claims that have remained unpaid for years.

The outstanding receivable on the WTC Project is the Debtor's most significant asset. The Debtor's liabilities are comprised primarily of its indebtedness to CCCI for work performed under the CCCI Subcontract, which indebtedness is ultimately payable to CCCI's trade creditors on account of trade debt due and owing to vendors that subcontracted with CCCI or supplied materials to CCCI during the pendency of the WTC Project.

As a result of the foregoing, on the Petition Date, the Debtor filed its chapter 11 bankruptcy case. The Debtor intends to file a plan of reorganization through which it will repay its obligations to CCCI and other creditors, thus enabling CCCI to repay the trade vendors who performed work on the WTC Project. The Debtor believes that based on the current valuation of its assets, there will be funds sufficient to make a distribution to unsecured creditors.

5.    Local Rule 1007-2(a)(2): Not applicable because the Debtor's case was not originally commenced under Chapter 7 or 13.

6.    Local Rule 1007-2(a)(3): Not applicable because no committee was organized prior to the Petition Date.

7.    Local Rule 1007-2(a)(4): Schedule 1 hereto lists the following information with respect to each of the holders of the Debtor's twenty (20) largest unsecured claims, excluding claims of insiders: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), telephone number, the name(s) of persons(s) familiar with the Debtor's accounts if known, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

8.      Local Rule 1007-2(a)(5): Not applicable because the Debtor does not have any secured debt obligations.

9.      Local Rule 1007-2(a)(6): Schedule 2 hereto is a summary of the Debtor's assets and liabilities.

10.     Local Rule 1007-2(a)(7): Not applicable because none of the securities of the Debtor are publicly held.

11.     Local Rule 1007-2(a)(8): Not applicable because none of the Debtor's property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity, including the name, address, telephone number of each such entity and the court in which any proceeding related thereto is pending.

12.     Local Rule 1007-2(a)(9): Schedule 3 hereto provides a list of the premises owned, leased or held under other arrangement from which the Debtor operates its business.

13.     Local Rule 1007-2(a)(10): Schedule 4 hereto provides the location of the Debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States.

14.     Local Rule 1007-2(a)(11): Not applicable because the Debtor is not party to any action or proceeding where a judgment against the Debtor or a seizure of its property is imminent.

15.     Local Rule 1007-2(a)(12): Schedule 5 hereto provides a list of the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

16.     Local Rule 1007-2(b)(1): Not applicable because the Debtor does not have

any employees.

17.     Local Rule 1007-2(b)(2):  Not applicable because the Debtor's officers,

stockholders and directors do not receive compensation from the Debtor.

18.     Local Rule 1007-2(b)(3):  Schedule 6 hereto provides a schedule of estimated

cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to

accrue but remain unpaid, other than professional fees, and any other information relevant to an

understanding of the foregoing for the thirty (30) day period following the Petition Date.

COLLAVINO CONSTRUCTION COMPANY LIMITED

By: _____
        Renzo Collavino

Sworn to before me, this
13ᵗʰ day of February, 2015

Notary Public

NANCY CHRYSTAL
Notary Public, State of New York
No. 01CH4834396
Qualified in Suffolk County
Commission Expires May 31, 20__

7

## Schedule 1

**20 Largest Unsecured Claims (Excluding Insiders)**

**SEE ATTACHED**

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of New York

In re    **Collavino Construction Company Limited**                                   Case No.  _____

                                                Debtor(s)          Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Collavino Constr. Company Inc. 30 Montgomery Street Suite 604 Jersey City, NJ 07302 | Collavino Constr. Company Inc. 30 Montgomery Street Suite 604 Jersey City, NJ 07302 | Trade Debt | | 6,215,409.62 |
| Peckar & Abramson P.C. 70 Grand Avenue River Edge, NJ 07661 | Peckar & Abramson P.C. 70 Grand Avenue River Edge, NJ 07661 | Legal Fees | | 68,687.59 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## Schedule 2

### Summary of Debtor's Assets and Liabilities

Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following unaudited financial information reflects the Debtor's financial condition as of February 1, 2015.

Total Assets:          $88,727,104.13[1]

Total Liabilities:     $7,100,375.00

---

[1] The Debtor's total assets include an $87,312,257.13 delay claim against the Port Authority arising out of the WTC Project, which claim is contingent upon recovery from the Port Authority.

## Schedule 3

**Premises Owned or Leased**

| Address of Property | Owned or Leased |
|---|---|
| 5255 County Road 42<br>Windsor, ON N8N 2M1 | Leased by a related entity. |

## Schedule 4

**Location of Debtor's Significant Assets, Books
and Records and Assets Outside of U.S.**

| Asset | Location | Value (if Outside U.S.) |
|---|---|---|
| Damages Claim | The Port Authority of New York and New Jersey<br>225 Park Avenue South<br>New York, NY 10003 | |
| Books and Records | 5255 County Road 42<br>Windsor, ON N8N 2M1 | |

## Schedule 5

### Senior Management

| Name | Tenure | Experience/Responsibilities |
|---|---|---|
| Paolo Collavino | 2007 – present | Paolo Collavino has been President of the Debtor since its inception. He has over fifteen (15) years' experience overseeing multi-million dollar construction projects. |
| Renzo Collavino | 2007 – present | Renzo Collavino has been actively involved in all aspects of the Debtor's business since its inception. He was the primary representative of the Debtor in connection with the WTC Project and has over thirty (30) years' experience managing multi-million dollar construction projects. |

## Schedule 6

### Cash Receipts and Disbursements, Net Cash
### Gain or Loss, Unpaid Obligations and Receivables

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides the estimated aggregated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remain unpaid (other than professional fees) for the 30-day period following the Petition Date.

| | |
|---|---|
| **Cash Receipts** | $ 0 |
| **Cash Disbursements** | $ 0 |
| **Net Cash Gain (Loss)** | $ 0 |
| **Unpaid Obligations (excluding professional fees)** | $ 0 |
| **Unpaid Receivables (excluding professional fees)** | $ 0 |