CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
C. Nathan Dee, Esq.
J.P. van Lent, Esq.
Elizabeth M. Aboulafia, Esq.

Proposed Counsel for Collavino Construction Company Limited

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                               :
In re:                                                         :    Chapter 11
                                                               :
COLLAVINO CONSTRUCTION COMPANY                                 :    Case No. 15-10344
LIMITED,                                                       :
                                                               :
                    Debtor.                                    :
                                                               :
---------------------------------------------------------------x

## MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTOR TO (I) CONTINUE ITS CASH MANAGEMENT SYSTEM, (II) MAINTAIN EXISTING BANK ACCOUNTS, AND (B) WAIVING CERTAIN OPERATING GUIDELINES RELATING TO BANK ACCOUNTS

Collavino Construction Company Limited, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed attorneys Cullen and Dykman LLP, hereby submits this motion (the "Motion") pursuant to sections 105 and 363 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, et seq. (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of  an interim order, substantially in the form annexed hereto as Exhibit "A", (A) authorizing the Debtor to (i) continue using its cash management system, (ii) maintain and continue to use existing bank accounts, and (B) (i) waiving certain operating guidelines relating to bank accounts (ii) scheduling a final hearing to consider entry of a final order, substantially in the form annexed

hereto as <u>Exhibit "B"</u>, granting the relief requested herein. In support of the Motion, the Debtor respectfully represents as follows:

## INTRODUCTION

1.      On February 18, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2.      The Debtor has remained in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Southern District of New York in this chapter 11 case.

4.      Simultaneously with the filing of its petition, the Debtor filed the Affidavit of Renzo Collavino pursuant to Local Bankruptcy Rule 1007-2 (the "Collavino Affidavit").  A more detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the Collavino Affidavit, filed contemporaneous herewith and incorporated herein by reference.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      The statutory predicates for the relief sought herein are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

**A.     Debtor's Entry Into WTC Contract, Subsequent Termination And WTC Claim**

7.      The Debtor is a Canadian corporation that was formed in 2007 as a single purpose entity in connection with its successful bid to perform concrete work for the Port Authority[1] on the WTC Project.  Following the award of the WTC Contract to Debtor and pursuant to Article 40 of the contract, the Debtor and its wholly owned subsidiary Collavino Construction Company Inc. ("CCCI") entered into a subcontracting agreement whereby CCCI would provide all necessary materials, labor and equipment to the Debtor in connection with the performance of work on the WTC Project.   Additionally, CCCI also entered into an agency agreement with 1 World Trade Center, LLC, effective as of February 8, 2007, to enable CCCI to solicit goods and services on the WTC Project from third party vendors as an authorized agent of the Port Authority of New York and New Jersey.

8.      On January 18, 2013, after substantially all of the work under the WTC Contract was complete, the Port Authority terminated the Debtor's contract for convenience pursuant to Article 31 of the WTC Contract.  Upon its termination of the WTC Contract for convenience, the Debtor (and ultimately CCCI and its trade vendors) became entitled to payment for the actual costs incurred on the WTC Project through and including January 18, 2013 plus a reasonable mark-up for profit and overhead which amounts are included in the WTC Claim.

9.      During the two years that followed the Port Authority's termination of the WTC Contract for convenience, the Port Authority repeatedly refused to make payment of any of the amounts due and owing to the Debtor, CCCI and CCCI's trade vendors that were set forth in the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Collavino Affidavit.

WTC Claim.  The Port Authority not only failed to make payment of the amounts due and owing

the Debtor and its creditors during that two year period, but it also intentionally delayed and

frustrated the resolution of the WTC Claim because the Port Authority refused to declare an

impasse between the respective parties which is necessary for the elevation of the WTC Claim to

the Port Authority's chief engineer per Article 31 of the WTC Contract.

**B.     Debtor's Subsidiary CCCI Seeks Chapter 11 Protection Because of Trade Vendor Lawsuits And To Enable CCCI To Continue Its Operations While WTC Claim Is Resolved**

10.     On October 17, 2014, the Debtor's sole subsidiary, CCCI, filed a chapter 11

bankruptcy case in this Court in order to obtain the protections of the automatic stay and prevent

the continued prosecution of seven (7) lawsuits filed by various vendors on the WTC Project

asserting breach of contract claims for non-payment in the aggregate amount of approximately

one million ($1,000,000) dollars.  The defense of the seven (7) vendor lawsuits  was hampering

CCCI's business operations.  Seven (7) days after CCCI's bankruptcy filing, the Port Authority

finally elevated the parties' dispute to the Port Authority's chief engineer pursuant to Article 31

of the WTC Contract.

11.     CCCI is an ongoing business whose operations include the employment of

approximately one hundred seventy five (175) employees to provide labor to related entity

Collavino Corp. in connection with three ongoing construction projects in the New York-New

Jersey metropolitan area.

12.     The outstanding receivable on the WTC Project and the Debtor's equity interest in

CCCI are the Debtor's most significant assets.   The Debtor's liabilities are comprised primarily

of its indebtedness to CCCI for work performed under the CCCI Subcontract, which

indebtedness is ultimately payable to CCCI's trade creditors on the WTC Project.  Accordingly,

the Debtor filed the instant chapter 11 case to facilitate the resolution of the WTC Claim for the benefit of the Debtor's estate, CCCI's estate and its creditors.

*The Debtor's Bank Accounts and Cash Management System*

13.    Prior to the Petition Date, in the ordinary course of the Debtor's business, the Debtor maintained a cash management system comprised of two (2) bank accounts (the "Bank Accounts") at Royal Bank of Canada ("RBC") which provide established mechanisms for the collection, management, and disbursement of funds (the "Cash Management System"). This Cash Management System enables the Debtor to manage and control corporate funds and ensure cash availability.

14.    Specifically, the Debtor's Cash Management System can be reduced to the following:[2] (a) a Canadian dollar business checking account (RBC Account No. X34254) (the "CAD Checking Account") and (b) a U.S. dollar business checking account (RBC Account No. X8082) (the "USD Checking Account"). The CAD Checking Account is the Debtor's primary account and is used for the payment of corporate tax obligations to the Canada Revenue Agency as well as for the payment of operating expenses including bank fees, accounting invoices and legal invoices. Certain tax refunds relating to Canada's Harmonized Sales Tax are deposited into the CAD Checking Account. The USD Checking Account is used primarily for the payment of bank fees, legal invoices and other payments to the extent that such payments are to be made in U.S. dollars.

---

[2] Historically, the Debtor also maintained two U.S. Dollar business checking accounts at J.P. Morgan Chase Bank, N.A. ("Chase"). Chase Account X3231 was used for intercompany transfers between the Debtor and CCCI in connection with payments made under CCCI's subcontract with the Debtor on the WTC Project. Chase Account X2035 was used to earn interest on any surplus cash, however it had remained inactive for the past several years. These accounts were closed in July 2014 prior to the Petition Date.

## RELIEF REQUESTED

15.     By this Motion, the Debtor seeks entry of an interim order, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (A) authorizing the Debtor to (i) continue its Cash Management System, (ii) maintain its existing Bank Accounts, and (B) (i) waiving certain operating guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines and (ii) scheduling a final hearing to consider entry of a final order granting the relief requested herein.

16.     The Debtor submits that the relief requested herein will help ensure the Debtor's orderly entry into chapter 11 and avoid many of the possible disruptions to its Canadian affairs that could divert the Debtor's attention from more critical matters during the early days of this chapter 11 case.

## BASIS FOR RELIEF REQUESTED

### A.     The Debtor Should Be Authorized to Continue to Use the Cash Management System

17.     The Debtor requests authority to continue to use its Cash Management System in order to avoid disruption to its Canadian affairs and maximize the value of its estate.  Therefore, it is essential that the Debtor be permitted to continue to utilize its Cash Management System to manage its cash flow and transfer monies, as needed, in the ordinary course of business in accordance with the procedures employed prior to the Petition Date.

18.     The Cash Management System constitutes a customary and essential business practice for the Debtor.  It allows the Debtor to track all cash payments, both in U.S. dollars and Canadian dollars, to control and monitor corporate funds and ensure cash availability.  Requiring the Debtor to establish a new system of accounts would be unduly burdensome with little corresponding benefit because the minimal activity in the Debtor's Bank Accounts make them

easily traceable without unnecessary disruption to the Cash Management System.  Accordingly, the Debtor respectfully requests that the Court authorize the Debtor's continued use of the Cash Management System described herein.

19.    Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. §363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor with the flexibility to engage in its day-to-day transactions without incurring excessive monitoring costs that would result from the need to provide  notice of, and obtain approval for, ordinary course activities.  See, e.g., Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 384 (2d Cir. 1997); Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.), 207 B.R. 406, 409 (S.D.N.Y. 1997).  The Debtor's ability to continue using the Cash Management System and engage in related routine transactions falls within the parameters of section 363(c)(1) of the Bankruptcy Code.  See Amdura Nat'l Distrib. Co. v. Amdura Corp., Inc. (In re Amdura Corp., Inc.), 75 F.3d 1447, 1453 (10th Cir. 1996); In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985) (holding that a debtor's request for authority to continue using its existing cash management system is consistent with section 363(c)(1) of the Bankruptcy Code).

20.    To the extent that continuing to use the Cash Management System is beyond the ordinary course of the Debtor's business, the Debtor submits that such use is permitted by sections 363(b)(1) and 105(a) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ."  11 U.S.C. § 363(b).  Courts generally hold that a debtor's decision to enter into a transaction outside the

ordinary course of business is governed by the business judgment standard.  See Comm. of

Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612,

616 (Bankr. S.D.N.Y. 1986).  Further, section 105(a) of the Bankruptcy Code further empowers

the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out

the provisions of this title." 11 U.S.C. § 105(a).

21.     Under the circumstances and in light of the Debtor's belief, in the exercise of its

business judgment, that continued use of the prepetition Cash Management System is in the best

interest of its estate, the Debtor requests that the Court authorize the Debtor to continue using the

Cash Management System.

**B.     Certain U.S. Trustee Guidelines Should be Waived**

22.     The operating guidelines relating to bank accounts set forth by the Office of the

United States Trustee for the Southern District of New York (the "U.S. Trustee") pursuant to the

*U.S. Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and*

*Trustees* (the "U.S. Trustee Guidelines"), which were adopted in order to assist the U.S. Trustee

in supervising the administration of chapter 11 cases, require chapter 11 debtors to, among other

things, (a) close all existing bank accounts; (b) open new debtor-in-possession operating, payroll

and tax accounts at certain financial institutions designated as authorized depositories by the U.S.

Trustee; and (c) obtain and utilize new checks for all debtor-in-possession accounts which bear

the designation "Debtor-in-Possession" and contain certain other information relating to the

chapter 11 case.  Strict enforcement of the U.S. Trustee Guidelines in this chapter 11 case would

disrupt the Debtor's ordinary course operations and cause confusion with its Canadian bank and

other business partners, thereby reducing efficiency and causing avoidable expense.

23.     Here, the Debtor's continued use of the Bank Accounts held at RBC is required for its smooth and orderly transition into chapter 11.  Although RBC is not an authorized depository by the U.S. Trustee, it is insured by the FDIC and is a longstanding and well established financial institution.  Furthermore, closing the Bank Accounts maintained at RBC would create unnecessary confusion and disruption in the Debtor's affairs, and all parties in interest in the case will be best served by the maintenance of the Bank Accounts at RBC because it will minimize disruption to the Debtor's business operations.  To ensure that the maintenance of the Cash Management System does not prejudice any parties in interest, the Debtor will separately record the balances of each of the Bank Accounts as of the Petition Date and track postpetition activity by documenting any postpetition transactions in the Debtor's books and records.  These transactions will also be incorporated into the monthly operating reports that will be filed with the Court during the pendency of this chapter 11 case.  Accordingly, the Debtor requests that this Court waive the U.S. Trustee Guidelines requiring that the Debtor close all existing bank accounts and open new debtor-in-possession accounts.

24.     The Debtor further requests that RBC, the bank where the Debtor holds its Bank Accounts, be authorized to (a) continue to administer the Bank Accounts in the manner maintained prior to the Petition Date in the usual and ordinary course; and (b) receive, process and honor and pay any and all checks, drafts, wires or ACH transfers drawn on the Bank Accounts by the holders or makers thereof, as the case may be, drawn or issued by the Debtor (i) after the Petition Date, or (ii) prior to the Petition Date, if such payment has been authorized by Order this Court.

25.     The Debtor also seeks a waiver of the requirement to establish specific accounts for operating, payroll and tax obligations, as it believes that these obligations, to the extent they

exist, can be paid most efficiently out of the Debtor's current Bank Accounts through the Cash Management System that was in place prepetition. The Debtor does not have any payroll obligations and its tax obligations are payable out of the CAD Checking Account. Therefore, the Debtor submits that the U.S. Trustee can adequately monitor the flow of funds into and out from the CAD Checking Account and that the creation of new debtor-in-possession accounts designated solely for the Debtor's tax obligations would be inefficient and unnecessary.

26.     The Debtor further submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, for all of the foregoing reasons, Bankruptcy Rule 6003 has been satisfied and it is essential that the Court approve the relief requested in this Motion.

27.     The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court others otherwise." As set forth above, the Cash Management System described herein is essential to prevent irreparable damage to the Debtor's ordinary course affairs. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

28.     Notice of this Motion has been given to (a) the United States Trustee for the Southern District of New York; (b) the Debtor's twenty (20) largest unsecured creditors; and (c) Royal Bank of Canada or its counsel, if known. The Debtor submits that, under the circumstances, no other or further notice is required.

29.    No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests entry of the annexed Order granting the relief requested herein, together with such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
       February 18, 2015

                                    CULLEN AND DYKMAN LLP


                          BY:    _/s/ C. Nathan Dee_____
                                 C. Nathan Dee, Esq.
                                 J.P. van Lent, Esq.
                                 Elizabeth M. Aboulafia, Esq.
                                 100 Quentin Roosevelt Boulevard
                                 Garden City, New York 11530
                                 (516) 357-3700

                                 *Proposed Counsel to the Debtor*

## EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
:
In re: : Chapter 11
:
COLLAVINO CONSTRUCTION COMPANY : Case No. 15-_____
LIMITED :
:
Debtor. :
:
------------------------------------------------------------------x

### INTERIM ORDER (A) AUTHORIZING THE DEBTOR TO (I) CONTINUE ITS CASH MANAGEMENT SYSTEM, (II) MAINTAIN EXISTING BANK ACCOUNTS, AND  (B) (I) WAIVING CERTAIN OPERATING GUIDELINES RELATING TO BANK ACCOUNTS AND (II) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion")[1] filed by Collavino Construction Company Limited, the above-captioned debtor and debtor-in-possession (the "Debtor") pursuant to sections 105 and 363 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, et seq. (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (A) authorizing the Debtor to (i) continue using its cash management system, (ii) maintain and continue to use existing bank accounts, and (B) (i) waiving  certain operating guidelines relating to bank accounts and (ii) scheduling a final hearing regarding the entry of a final order regarding the relief requested in the Motion; the Court, having reviewed the Motion and having heard the statements of counsel in support of the relief requested in the Motion at the hearing before the Court (the "Hearing"), finds that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core matter pursuant

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

to 28 U.S.C. § 157(b)(2), notice of the Motion and the Hearing were sufficient under the circumstances and that no further notice need be given, and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis to the extent set forth herein.

2.      The Debtor shall be and hereby is authorized to continue to manage the collection and disbursement of its cash utilizing its Cash Management System in the ordinary course of business consistent with its prepetition practices, and to collect and disburse cash in accordance with the Cash Management System.

3.      The requirements of the U.S. Trustee Guidelines that the Debtor (i) close all existing Bank Accounts and open new debtor-in-possession accounts, (ii) establish specific bank accounts for operating, payroll and tax payments, and (iii) obtain and utilize new checks which bear the designation "Debtor-in-Possession" and contain certain other information regarding the chapter 11 case are hereby waived.

4.      The Debtor may disburse funds from the Bank Accounts by checks, drafts, wires, debits, ACH transfers or by any other means.

5.      RBC, the bank where the Debtor holds its Bank Accounts, shall be and hereby is authorized to (a) continue to administer the Bank Accounts in the manner maintained prior to the Petition Date in the usual and ordinary course; and (b) receive, process and honor and pay any and all checks, drafts, wires or ACH transfers drawn on the Bank Accounts by the holders or makers thereof, as the case may be, drawn or issued by the Debtor (i) after the Petition Date, or (ii) prior to the Petition Date, for the payment of any and all amounts approved by this Court.

2

6.      The Debtor shall separately record the balances of each of the Bank Accounts as of the Petition Date and track postpetition activity by documenting any postpetition transactions in the Debtor's books and records to the same extent maintained by the Debtor prior to the Petition Date.

7.      Notwithstanding Bankruptcy Rules 6004(h) or 7062, the terms and conditions of this order shall be immediately effective upon its entry.

8.      A hearing shall be held to consider the relief granted herein on a final basis on _____, 2015 at __:00 _.m. before the Honorable _____, United States Bankruptcy Judge, in Courtroom ___ of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004 (the "Final Hearing") and, pending entry of an order following the conclusion of the Final Hearing, the relief granted herein shall remain in effect on an interim basis.

9.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: February _____, 2015
       New York, New York

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT "B"</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                                   :

In re:                                    :   Chapter 11
                                                   :

COLLAVINO CONSTRUCTION COMPANY   :   Case No. 15-_____
LIMITED                                   :
                                                 :

                     Debtor.               :
                                                 :
------------------------------------------------------------------x

**FINAL ORDER AUTHORIZING THE DEBTOR TO (I) CONTINUE ITS
CASH MANAGEMENT SYSTEM, (II) MAINTAIN EXISTING
BANK ACCOUNTS, AND (III) WAIVE CERTAIN OPERATING
GUIDELINES RELATING TO BANK ACCOUNTS**

Upon the motion (the "Motion")[1] filed by Collavino Construction Company Limited, the

above-captioned debtor and debtor-in-possession (the "Debtor") pursuant to sections 105 and

363 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, et seq. (the

"Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") for entry of an order authorizing the Debtor to (i) continue using its

cash management system, (ii) maintain and continue to use existing bank accounts, and (iii)

waive certain operating guidelines relating to bank accounts; and the Court having entered the

*Interim Order Authorizing the Debtor to (I) Continue its Cash Management System, (II)*

*Maintain Existing Bank Accounts, and (III) Waive Certain Operating Guidelines Relating to*

*Bank Accounts* [Docket No.____] (the "Interim Order"); the Court, having reviewed the Motion

and having heard the statements of counsel in support of the relief requested in the Motion at the

hearing before the Court (the "Hearing"), finds that the Court has jurisdiction over this matter

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. §§ 157 and 1334, this is a core matter pursuant to 28 U.S.C. § 157(b)(2), notice of the Motion and the Interim Order were sufficient under the circumstances and that no further notice need be given, and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

10.     The Motion is GRANTED on a final basis.

11.     The Debtor shall be and hereby is authorized to continue to manage the collection and disbursement of its cash utilizing its Cash Management System in the ordinary course of business consistent with its prepetition practices, and to collect and disburse cash in accordance with the Cash Management System.

12.     The requirements of the U.S. Trustee Guidelines that the Debtor (i) close all existing Bank Accounts and open new debtor-in-possession accounts, (ii) establish specific bank accounts for operating, payroll and tax payments, and (iii) obtain and utilize new checks which bear the designation "Debtor-in-Possession" and contain certain other information regarding the chapter 11 case are hereby waived.

13.     The Debtor may disburse funds from the Bank Accounts by checks, drafts, wires, debits, ACH transfers or by any other means.

14.     RBC, the bank where the Debtor holds its Bank Accounts, shall be and hereby is authorized to (a) continue to administer the Bank Accounts in the manner maintained prior to the Petition Date in the usual and ordinary course; and (b) receive, process and honor and pay any and all checks, drafts, wires or ACH transfers drawn on the Bank Accounts by the holders or

2

makers thereof, as the case may be, drawn or issued by the Debtor (i) after the Petition Date, or (ii) prior to the Petition Date, for the payment of any and all amounts approved by this Court.

15.    The Debtor shall separately record the balances of each of the Bank Accounts as of the Petition Date and track postpetition activity by documenting any postpetition transactions in the Debtor's books and records to the same extent maintained by the Debtor prior to the Petition Date.

16.    Notwithstanding Bankruptcy Rules 6004(h) or 7062, the terms and conditions of this order shall be immediately effective upon its entry.

17.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2015
      New York, New York

                                             _____
                                            UNITED STATES BANKRUPTCY JUDGE

3